[No. 4969.]

In re Senate Resolution No. 10, Concerning Governorship Contest.

1. Constitutional Law—Contest for Office of Governor—Interrogatory from Senate.

In a contest before the general assembly for the office of governor, where a resolution was introduced declaring that, as

it was impossible to separate the fraudulent from the legal votes, it was impossible to tell whether the contestor or contestee was elected, and declaring that no person was elected governor, an interrogatory from the senate to the supreme court, asking whether the general assembly could legally adopt said resolution and declare a vacancy in the office of governor, presents a question which it is the duty of the court to answer under section 3, article VI, of the constitution.

**2.  Contest for Office of Governor—Authority of General Assembly—Vacancy.**

In a contest for the office of governor, before the general assembly, the general assembly has no legal authority to adopt a resolution declaring that no person was elected governor, and that a vacancy exists in the office.

*Original Proceeding on Interrogatory from Senate.*

The honorable senate of the fifteenth general assembly has transmitted to this court certain interrogatories for opinion and answer. From the statement and resolution accompanying them the following appears:

At the last general election the Honorable Alva Adams and the Honorable James H. Peabody were rival candidates for the office of governor for the term beginning on the second Tuesday of January, last. At the time provided by the constitution and laws of the state, the general assembly convened in joint session. The election returns were thereupon duly opened and published; and it was then declared by the presiding officer of the joint assembly that the Honorable Alva Adams had received the highest number of votes; that he was then and there declared elected to the office of governor for the term commencing on the second Tuesday in January, 1905; that he thereafter qualified and entered into the possession of the office, and ever since has been, and now is, discharging the duties of governor. The Honorable James H. Peabody had been elected to the office of governor for the term beginning on the sec-

ond Tuesday in January, 1903, and at the time of
the general election in 1904, and down to the date
when the Honorable Alva Adams was inducted into
office, was acting governor by virtue of his election in
1902.    At the general election in 1904, Honorable
Jesse F. McDonald was duly elected and thereafter
qualified as lieutenant-governor for the term begin-
ning on the second Tuesday in January, last, and
is now acting in that capacity.   After the Honorable
Alva Adams was inducted into the office of governor,
a contest was duly initiated against him for the office
of governor, by the Honorable James H. Peabody,
before the general assembly, claiming that, in fact,
he had received the highest number of legal votes
cast at the general election in 1904 for the office of
governor.   Thereafter the two houses of the general
assembly jointly assembled for the purpose of hear-
ing and determining the contest; testimony has been
taken and introduced on behalf of both contestor and
contestee.    Among the proceedings had was the
appointment of a committee from the members of the
two houses upon which was imposed the duty of sub-
mitting a report for the consideration and judgment
of the joint assembly of the two houses on the con-
test proceedings.    This committee has filed four
reports; that is to say, one reciting, in substance,
that the contestor had received the highest number
of legal votes; another report, signed by certain
members, reciting that the contestee had received the
highest number of votes, and recommending that the
contest be dismissed; a further report, signed by cer-
tain members of the committee, to the effect that
the charges of the contestor were in part established,
but that sufficient fraud and illegality had not been
shown in the conduct of the election to justify a
decision in favor of the contestor; and a fourth
report, signed by Morton Alexander, to the effect

that the frauds perpetrated at the election were of such a nature as to render it impossible to separate the legal from the illegal votes for the office of governor, and therefore, impossible to determine whether the contestor or contestee had been elected. The report then declares that no person was elected governor, and proposes a resolution to the effect that the action declaring the Honorable Alva Adams elected be rescinded, and a vacancy declared to exist in the office of governor.

On the incoming of these reports the two houses jointly assembled to consider them. A motion was made and seconded to adopt the Alexander report. A controversy then arose concerning the power and authority of the convention to adopt this report, and the legal effect of its adoption on the question as to who would be entitled to the office of governor in that event. The statement then recites, in substance, that the foregoing motion is now pending and undetermined; that many of the members are undecided as to the authority of the convention to adopt the Alexander report, and its legal effect, if adopted; that such doubt and uncertainty has, in effect, created a dead-lock in the disposition of the contest proceedings, and that many members have declared their intention not to decide the contest until judicially advised on the authority of the convention to adopt the Alexander report, and what the legal effect of its adoption would be on the question as to who would thereafter be entitled to the office of governor. Under these conditions, the joint assembly adopted a resolution, requesting the honorable senate to submit to this court the following interrogatories:

"Interrogatory 1. Can the two houses of the general assembly in said joint convention assembled, in said contest proceedings, legally adopt the said

Alexander report upon the facts set forth and recited therein?

"Interrogatory 2. Can the said joint convention so assembled legally declare a vacancy to exist in the office of the governor of the state of Colorado upon the facts recited and set forth in the said Alexander report?

"Interrogatory 3. Can the said joint convention, in the pending contest proceedings, in the event of adoption of said Alexander report, legally decide who is entitled to the office of governor of Colorado, or does the constitution of Colorado provide in such event who is entitled to such office, and if so, what person is so entitled under said constitution?"

Mr. E. T. Taylor, *amicus curiae.*

Mr. W. H. Bryant and Mr. Geo. L. Hodges, for the affirmative.

Mr. John M. Waldron, for the negative.

*Per Curiam.*—The first proposition to consider is, whether or not we should answer the questions propounded. The constitution provides that:

"The supreme court shall give its opinion upon important questions upon solemn occasions when required by the governor, the senate, or the house of representatives."—Sec. 3, Art. VI.

It will be observed that the only limitation imposed upon the authority of the executive and legislative departments as to when either may require the opinion of this court is "upon solemn occasions." Under this provision many questions have been submitted for our consideration, some of which have been answered, and others not. Necessarily, it was not intended that the legislative and executive departments of government could call upon this court for an opinion on every question which might arise

in the discharge of their functions, but was limited
to questions which so vitally affected public interest
as to render it necessary for the public welfare to
have a declaration from the highest judicial tribunal
in the state. The department propounding the ques-
tion in the first instance determines whether an occa-
sion exists which justifies its submission, but it
remains for the court to finally determine that propo-
sition. Most of the questions submitted in the past
have been from the legislative department on the
subject of pending legislation. One prerequisite
required in such matters is that it must appear that
the bill which is the subject of inquiry will likely
pass the branch of the general assembly submitting
the question, and the particular section of the con-
stitution to be considered in connection therewith
must be pointed out. It has also been held that the
title to an office, or the construction of an existing
statute, or private rights would not be determined
in an *ex parte* proceeding in answer to a legislative
question. It is obvious that neither of these rules is
applicable in the present instance. In the passage
of bills the preliminary steps indicate whether or
not any particular bill is likely to pass, but in con-
test proceedings there is no provision by which the
action of members can be recorded except when
voting on the merits. On pending legislation the
question of the validity of a bill depends upon
whether its provisions violate the constitution, and
therefore in submitting a question to this court on·
that subject, the sections of the constitution supposed
to be involved should be pointed out, but that is not
this case. Private rights, the title to an office, or
the construction of an existing statute will not be
determined in an *ex parte* proceeding in answer to
a question from either the legislative or executive
departments, but this is not an *ex parte* proceeding.

There are actual litigants, the contestor and the contestee. They are before the general assembly, and have submitted their respective claims to the determination of that body. The general assembly has submitted to the court certain questions arising out of that contest, and for the purpose of considering these questions, the parties litigant are before this court. The fact that it is asserted that the rights of the lieutenant-governor are involved does not preclude the court from considering the questions under any decision heretofore announced. It does not appear that he is making any claim to the office of governor. The questions are the outgrowth of pending litigation, and tribunals to which matters in controversy may be properly submitted cannot refuse to proceed with the litigation and determine the rights between the parties litigant, unless it appears that the presence of other parties is necessary for a complete determination of the controversy. None of the rules we have heretofore announced in determining whether or not questions submitted by the general assembly should be answered, are applicable in the present circumstances, and the remaining question on this subject is, whether or not conditions are presented which require this court to answer and give an opinion on the interrogatories submitted?

The contest relates to the office of governor. It is common knowledge that considerable time has been consumed by the general assembly in hearing this contest, and that the welfare of the public demands that the controversy be speedily settled. It appears that members of the general assembly desire to be advised as to the power and authority of the joint convention to consider the Alexander report; and that until this question is in some way satisfactorily settled, much time, at least, will be consumed in discussing the various phases of the contest proceedings

as presented by the respective reports. In short, the general assembly wishes to be advised with respect to its authority in disposing of this contest so that intelligent action may be taken, or action which might be illegal, prevented. Certainly, under these conditions, grave questions are presented which vitally affect the public interests, and which this court, by virtue of the constitutional provision referred to, should aid as far as possible in having speedily and correctly settled. The majority of the court is of the opinion that questions are presented upon which an opinion should be given. We come, then, to a brief consideration of the questions propounded.

The constitution provides that contested elections for the office of governor shall be determined by the two houses on joint ballot, in such manner as may be prescribed by law.—Sec. 3, Art. IV. The provisions of the law which have been passed in pursuance of the constitutional provision are brief and clear. They prescribe the manner of initiating the contest, the various steps which shall be taken, and the rules to be observed in conducting the contest. They will be found in sections 1657 to 1660, 1 Mills' Ann. Stats., both inclusive. Neither the constitution nor statutory provisions on the subject contemplate giving any power or authority to the general assembly to decide anything more than the issues between the contestor and the contestee, and render judgment accordingly. We must, therefore, answer the first and second interrogatories in the negative.

This conclusion renders it unnecessary to answer, or enter upon a discussion of, the legal questions involved in interrogatory 3, because the conditions cannot arise in the present contest proceedings which render that inquiry pertinent to their determination.

Although a majority only of the court is of the

opinion that the questions propounded should be answered, it having been determined that they should be, in the decision answering them we are in full accord.